Case number 14-1056 at L. Fallbrook Hospital Corporation doing business as Fallbrook Hospital Petitioner v. National Labor Relations Board. Ms. Cassetta for the petitioner, Ms. Sheehy for the respondent. Good morning, your honors. May it please the court, Kaitlin Cassetta appearing on behalf of Fallbrook Hospital Corporation doing business as Fallbrook Hospital. Today, the hospital respectfully requests that this court deny enforcement of the board's award of negotiation expenses in the underlying case for two reasons. First, the board's award of negotiating expenses are not supported by substantial evidence based upon a review of the record as a whole. Second, the board's application of one singular case in terms of precedent for its award of negotiating expenses was arbitrary and capricious given how entirely inopposite the case cited unbelievable was to the board's award of negotiating expenses in this case. Alternatively, the hospital respectfully requests that the board's award of negotiating expenses be remanded for two reasons. First, so that the board can explain the award of negotiating expenses under a set of facts so entirely different from the facts present in unbelievable. And second, in light of the changed circumstances that have occurred in the case since the board's order and award were filed or issued in April of 2013. Could we talk about that last point just for one moment? That has to do with your motion to remand. Yes, your honor. So the board's response is that the remedy for expenses has to do with past expenses, money that the union spent unnecessarily because of your client's actions. And the changes that you're talking about have to do with things that occurred after that. So if we assume for the moment that the remedy was appropriate, how does your motion to remand change the situation? How do circumstances that change later have anything to do with the fact that the union was required to spend money for negotiations that it shouldn't have been required to spend? Your honor, the board's justification cited in its decision in order for the award of negotiating expenses is two-pronged. First, that the union must be made whole, and second, that the board must restore the status quo ante that exists at the bargaining table between the parties. As of that time? I would imagine that is... That's what ante means, right? That is the status quo before the misconduct by your client. Precisely, your honor. That's what needed to be restored, but the reason for the restoration was prospective. So that in bargaining going forward, the two parties would be on equal footing as they bargained towards a collective bargaining agreement. Where does it say that? In the board's order? Yeah. I see the part that says to restore the economic strength that is necessary to ensure a return to the status quo ante at the bargaining table, but I don't see where it says that the purpose is to ensure they're able to do things better in the future. Your position is you could destroy the union and that would be okay because we're not going to have employees anymore anyway? Our position was never an attempt to destroy the union, which is precisely why we're... No, but I'm asking you as a hypothetical. Imagine that were the consequence. You would say that the changed circumstance that we don't have any employees anymore means we don't have to put the union back in the situation it was? Your honor, our argument is slightly more nuanced than that in that we appreciate the restoration. We understand the board's justification of a make whole remedy, but that's not the only justification that the board relied upon. Here it also states that at least half of its goal, perhaps more, perhaps less, the board isn't entirely clear in its decision, but part of its consideration is the idea that the parties must be returned to equal footing for prospective bargaining sessions. If they're going to restore the status quo... Where does it say that? I believe it's implied. Focus on the board's order. The board's order says they're granting negotiation expenses because they warranted to make the union whole for the resources that were wasted because of your client's unlawful activity. That's the justification. The justification is... There's case law that supports that in appropriate circumstances where the board decides that it's sufficiently egregious under the terms that they've stated. They will award expenses because the union has wasted time unnecessarily. That's the justification. That's part of the justification. The board's stated justification is both that it needs to restore, but the reason stated, there's no explanation for why they would need to restore the status quo at the bargaining table if the board hadn't been contemplated for negotiations going forward. Isn't the union a union that represents other employees and other workplaces? It's general just saying the union should be made whole so it can go on and do the work that it is statutorily protected in doing, which includes any work this union might want to do anywhere, no? Your Honor, that may be a sufficient reason to award negotiating expenses, but that's not the reason stated by the board, and that's why we would be asking for a remand. I don't think it's necessarily limited to your interpretation if it says, to restore the economic strength that is necessary to ensure a return to the status quo ante at the bargaining table. The bargaining table is where the union goes for all its employees, and it's just basically saying so the union can get back to where it was and do its work. Your Honor, I would be worried at that point about the punitive nature of an award of that type to an employer who's no longer bargaining. So if the National Labor Relations Act and the board are... How is it punitive to restore somebody to the position that they were in but for the misconduct by your client? That's not punitive. No, Your Honor. That's purely remedial. Yes, and if the board had stated simply that the reason for the imposition of the award of negotiating expenses was the fact that they wanted to make whole, then my client wouldn't have filed the motion to remand. However, the board's justification is not simply a make-whole remedy. It also includes this language regarding the status quo at the bargaining table, which if the board does wish for that to apply to all employers that the union might deal with or simply the one employer here in the case so far, that is not clear from the board's decision, and that's why a remand would be appropriate. I'd like to turn now to the reasons why this court should deny enforcement of the board's award of negotiation expenses. The board relies on three factors in the underlying case for its finding of unusually aggravated misconduct, but the record would reflect that none of the three factors relied upon by the board rises to the level of unusually aggravated misconduct. The requirement that the hospital placed on the union that it submit its proposals before the hospital would respond to those proposals was one made in good faith where the union had submitted roughly 90 percent of its proposals in the first bargaining session. Furthermore, substantial evidence of good faith exists in the record below where it shows that the hospital did provide information so that the union could complete its bargaining proposals and, true to its word, the hospital did exchange proposals with the union. Did the ALJ accept that that was done in good faith? The ALJ does not hold that it's in good faith. It's my client's representation that it's evidence of good faith ignored by the board in finding unusually. So you really are challenging not only the remedy but the underlying finding, even though you're not appealing that? We're not appealing the underlying finding. Well, the underlying finding is that it was not in good faith. So what are we supposed to do with this? The underlying finding is that there is a violation, and we're appealing on the grounds of what we believe is the mischaracterization in terms of how the conduct is viewed. But the violation was for not conducting bargaining in good faith, right? Yes, Your Honor. That's the violation, and you're not appealing that? No, but we are appealing a finding of unusually aggravated misconduct by the hospital. But you're trying to defend on that, appeal on that, on the ground that you acted in good faith when you're not appealing the finding that you didn't act in good faith. I'm a little mixed up as to how we do this. Sure. Your Honor, I'm not asking the court to reverse the finding of bad faith. What I'm saying is that you can't get to unusually aggravated misconduct in cases where, even if the overall conclusion was bad faith by the board, there's still evidence of good faith which cuts against a finding of unusually aggravated misconduct. So that would be helpful if you would focus on the conduct that is not in contradiction to the ALJ's bad faith findings that you say is supported by the record that is in good faith. What is that conduct? For example, the record below does indicate that the hospital responded to the union's request for information. When did it do that? Throughout the bargaining between the parties, there were 11 bargaining sessions held throughout 2012 and 2013, and I believe that the record indicates that throughout that process, from the very first bargaining session, the hospital responded to requests for information from the union. That's not my reading of the record. Can you point to anything specific that shows a prompt production of information that was either needed by the union to prepare its proposals or requested by the union as part of its representation needs? I believe that the administrative law judge's decision in the case indicates that, for example, the first bargaining session took place on June 13th of 2012, and then at that bargaining session a preliminary information request was provided to the union. That request was responded to at least in part on June 25th, 12 days later, by the hospital. And then another... What page are you looking at? I'm on the ALJ laws decision, page 6. I think your pages are the same as mine. So that would be 283 of the appendix? I'm sorry? I have it found in an appendix, 283 of the appendix? I don't have the appendix before me, but I can give you the quote and we can make sure. I have Matthews gave the hospital a preliminary information request. Paragraph number? It's under heading B, bargaining meetings in progress. End of the first paragraph, just after footnote 8. Okay, on June 25th the union received some of the information. That's correct. The ALJ, in the last paragraph on that subject, makes it absolutely clear there's a violation, and says that your explanations are not adequate. And you said to the Chief Judge you're not challenging those findings. The ALJ specifically says in the last paragraph, I hear your defenses, I don't buy them. Your claim on confidentiality comes too late, you didn't raise that. And goes through the rest of it and says you violated the act by refusing to provide information. That's a finding, you're not challenging it. Your Honor, I understand that. What we are challenging is the characterization by the board of those findings as conduct sufficient to rise to the level of unusually aggravated misconduct. What are we, you know, so write the opinion for me. How do we distinguish? He doesn't mean that literally. Take you up on the offer. Yeah, I'm sure he does. What are we supposed to say? This is within their discretion to make that determination. And how do they somehow violate the trust that we have in them as an agency with the expertise they have to look at the circumstances here to find this bad faith bargain was sufficient to justify an award of negotiating expenses. While the hospital understands that the board is granted a wide range of discretion and deference, the board is still obligated to justify its decision. At least in my mind, it is there. They signed the case law, they explained what the findings were, and they said in their view that's enough. This was an employer who was doing not good things under the act, and they were doing enough of it so that we're not going to tolerate this. Now, what is it that's wrong with that? What would I write as a judge and say, yeah, we understand there was an unfair labor practice, but you went over, what's the magical line? Well, that's actually the precise reason why we're appealing the award of negotiating expenses. If you set aside the question of the facts and the underlying record and focus on the board's citation to unbelievable, there's no evidence in this case that rises to the same level. Why does it have to do that? I think everybody agrees, at least the ALJ agreed it was not as egregious as an unbelievable, but unbelievable didn't say it has to be as unbelievable as an unbelievable. It just says it has to be egregious. Right, but it really doesn't draw a line for employers. It's arbitrary. That's not the problem of the word egregious. Right. Now we're doing this on a case-by-case basis. Now we'll have another case in which employers will know that if they repeatedly refuse to engage in bargaining and walk out on proceedings and all the other things that don't provide the information, then it's egregious. More explanation is required from the board because the departure from unbelievable is a substantial departure, and unbelievable, the behavior is willful disregard of established black-letter law, and those same circumstances do not apply in this case. Ms. Cassata, I think one of the concerns about this case is if you take all the conduct together, and one of the reasons I was asking you about what would you point to that's evidence of good faith, is you go through this and it's hard to identify any affirmative engagement by the hospital. They have a problem, and instead of saying we're going to have to work out these, what is it called, an ADO, and how that interacts with what we're doing, and the union says, yeah, we'll talk about that. And instead of sitting down and saying, look, we need to make sure that this is covered by our privilege, we need to make sure that the employees know that our form is never optional, and the union has to get on board with that, that's not what they did. Right. Carmody walks out, and in situations where providing information, each time you point me to something, it's like, well, they provided some. They held out on information that the union thought was important. They walked out of meetings. There's a management person who recently provided to a management person in the room, and instead of saying, can we have her leave so we can proceed, because now her status has changed, walk out. So you look at this and you say, what actually did they do? I mean, it reads like, and it may not have been in some as egregious, I think everybody agrees, it's not as egregious as the unbelievable case. Nothing in the unbelievable case requires that. So then the question is, what shows that they were functioning in any way as a bargaining partner? I think that the question in this case with regard to the denial of enforcement or the remand doesn't have to do so much with the hospital's affirmative obligations to take action so much as it does with the board's obligation to justify why it's departing. I mean, the standard for an award of negotiating expenses is unusually aggravated misconduct. And in unbelievable, in HTH Corporation, in Haro Services, all the cases cited by the board, both as post hoc rationalization and in the order themselves, all of those cases indicate a willful disregard of established law. And that does not exist and was not found by the board in this case. But the board's saying that willful disregard of established law isn't the test. The test is unusual. And who knows better what's usual and unusual than the board, which sees hundreds and hundreds and hundreds of these cases every day as compared to the court, which doesn't. So don't we have to defer to their view unless their view itself is arbitrary and capricious? Their view itself is arbitrary and capricious in as much as they cite to only unbelievable for the proposition that an award of negotiating expenses is appropriate. And the courts have previously found that when an agency does that, relies on inopposite case laws, the sole basis upon which to rest their decision, that decision is rendered arbitrary and capricious. So to the extent the board wants to extend what was supposed to be a limited remedy for extraordinary circumstances to cases with much more ordinary circumstances like the ones at bar, then it needs to do so with a more thorough and detailed rationale included in their decision. And that does not exist in the board's order and award here. Let me just ask two fact questions. In your brief at page 15, you talk about two things which were in mitigation. One is that the parties had a pre-agreement, and the other that the hospital believed that this was going to go to an arbitrator. In looking in your answering brief on the question of remedies, you don't mention either of those. Well, I believe that as we're not challenging the underlying finding of a violation of the law and we're just challenging the characterization of that violation as unusually aggravated misconduct, we did not focus our appeal on the question of the existence of the labor relations agreement. However, it is implicated by the board's finding of unusually aggravated misconduct in as much as— I understand that. But you complain that the board failed to account for these two things in its opinion, pre-agreement and the arbitration. But you didn't bring those to the board's attention in your brief. In our—to this court? In this brief? No, to the board. To the board. The respondent's answering brief, which is the response to the exception about not giving remedies. And under Section 10E of the National Labor Relations Act, we can't even consider an argument that you didn't put before the board. But you certainly can't complain that the board didn't consider it since you didn't make the argument to them. What am I missing here? I believe that—and you'll have to—I hope you'll grant me a little deference with regard to the exact facts. But I believe that the evidence of the labor relations agreement was— an attempt was made to introduce that before administrative law judge laws. And she accepted, I believe, some of the evidence but not all of it. I do believe that that was raised as part of the hospital's exceptions to administrative law judge's order. I don't know if it's mentioned in the answering brief or only the principal brief in support of exceptions. In the exceptions to the merits finding. But it is not an argument that you raise in the brief, which I have in front of me, as to why the award of negotiating costs would be improper. And yet you are complaining that the board didn't take those things into consideration in deciding that. It seems a little unfair and perhaps outside our jurisdiction because you didn't make the argument to the board in the first place. I would argue that we did make the argument to the board. And I understand it was in the merits section. But really our concern at this point with regard to the labor relations agreement is narrowed to a very particular point, which is the board takes a contrary and contradictory view of the existence of the labor relations agreement in its decision. And that's really the—to the extent that's implicated by our arguments concerning the award of negotiating expenses, it's because it was used by the board when it was convenient. And as much as they said, no, there was a preexisting agreement, and that's why the provision of proposals early on in negotiations, you know, don't rise to the level of, you know, good faith or they don't do anything to undercut the finding of unusually aggravated misconduct. But then for the rest of the board's decision, they, you know, refute the idea that the labor relations agreement existed. So that's really the limited capacity in which I believe that we would be at this point raising a question about the existence of the labor relations agreement today. Our focus, again, is on denial of enforcement because of the board's unsupported finding and because of the fact that the standard set by unbelievable not only is not met here, but this case falls so far below that it is a substantial departure from the board's prior precedent that goes unexplained in its decision in order. And for those reasons, this court should deny enforcement or remand this case to the board. Thank you. Thank you. We'll hear from the board. Good morning, Your Honors. Barbara Sheehy for the National Labor Relations Board. I'm going to touch very briefly, I think, on the motion to remand. I think I don't have anything additional to add besides what it sounded like, the panel, the way the questions were going. But I do think we would reiterate that the board, I don't think, has ever taken the view that the award of negotiation expenses is too pronged and that it's specific to these parties, the inflicting, the violator and the victim, that those two parties specifically have to return to the exact same bargaining table for an award of negotiation expenses to be proper. And I think it is worth pointing out, Judge Pillar, you asked, you know, isn't it the case that this union has other members? And, in fact, this union has other members represented by, sorry, this union has members that it represents with this exact same employer in at least 16 different affiliates across the country. And as far as record evidence, it has at least one. What's clear in the record is it has at least one unit that it represents with Barstow Hospital, which is an affiliate of the same parent company. And they're in the same situation in a follow-on case, no? Exactly. Yeah, in fact, I think the brief is due in that case tomorrow in this court. I'm going to move then quickly to the argument, I guess, if I can make it out, that they're not contesting the unfair labor practices, but they're contesting the characterization that the conduct was unusually aggravated misconduct. And I think here I would just like to highlight that it's not that the board didn't characterize the conduct as unusually aggravated misconduct. What it did is it looked at the litany of the disengagement, I think, which Judge Pillar pointed out, that there was absolutely no evidence of an engaged employer. They look at the totality of those circumstances from the first day that they actually bargained, which was July 3rd, the preliminary June dates were actually not bargaining, they were meeting and logistical issues, up until January 2013. And at no point during that time was there a sincere effort to reach an agreement. The board said on the basis of all of that, looking at all of that, looking at the refusals to provide information fully, looking at the refusal to bargain over terminations, that that conduct rose to the level, after you found the violations, they move into then how are we going to remedy this, all of that conduct, they decided, rose to the level of unusually aggravated misconduct and said, because of that, we're going to put the union back in the place it was before you had them waste all of their resources coming to the table for useless bargaining sessions for the seven or eight months that bargaining went on. And the only last point, I wanted to touch very, very quickly on the pre-negotiation agreement. I think it's a point well taken, whether it was raised in the exceptions on the merits part and also in the remedial portion of the exceptions. And I think the way the board decided to treat it was it was raised, and so we just went with a different approach to it, which was the board considered it. So rather than say the argument hadn't been made or hadn't been preserved, the board took the option of saying we think the board considered the pre-negotiation agreement. When you say the board, do you mean the lawyers for the board? Lawyers for the board, yes. Sorry. It's sort of irrelevant to us, right? They're under 10E. It doesn't make any difference what you say on that question. Sure. I'm just highlighting that. But I think the board, I think on its face, though, the pre-negotiation agreement has no bearing at all on the conduct of Fallbrook, whether it's considered or not. That agreement was reached by the parent company in June. No, actually it was before the certification, so it was before May. That was between the parent company and the union. Fallbrook didn't even come in and sign that until July or August. And on top of that, it's not even a self-executing document. So it's not as if the union could take these three articles and say, give us our retirement funds because you signed off on three articles. Are you suggesting in your argument that the fact that the employer said, you know, we're not talking until you give us your full list of demands, is that somehow egregious? I think if you look at what the board did, the administrative law judge, I think, talks about it more and then the board adopts it. The administrative law judge doesn't specifically say, because I think this was a big sort of concern, exactly what does this case mean as it relates to conditioning bargaining on the submission of proposals. And the administrative law judge here does not say that that in and of itself, that single incident, that single condition, is evidence of bad faith, is itself bad faith bargaining. What the judge says, and again adopted by the board, what the judge says is that is indicia of bad faith, and then she went and looked at everything else and said, on the basis of this, I'm finding bad faith bargaining. But in and of itself, I don't believe the case stands for the proposition that if you give off all other overtures of engaging in bargaining, but you choose to say, I'm not going to give you my proposals until you submit yours, and there's nothing else going on, I don't know that you could rely as an employer, or I'm sorry, as a union, on this case and say, that's bad faith. I don't think the case stands for that proposition. I think the administrative law judge makes it pretty clear that it's a case. Well, the administrative law judge says, I find the totality of the misconduct, put up a series of roadblocks, and then lists all of it. So you're obviously right about that point. I don't think the other side is not suggesting that you're wrong about that point. Okay. All right. Not on the merits. We're talking about they are picking piece by piece at the remedy here. Sure. But they're not even appealing the merits decision. No. Right. So their concern, I mean, what's your response to the notion that this decision exemplifies the difficulty for employers of figuring out where the line is between mere bad faith and unusual misconduct? Say an employer says, I'm fine with being found in bad faith, I don't believe in unions, I don't believe in the NLRA, and I'm just going to, you know, not do anything. And if I have to pay for that at the end of the day, fine. But I'm going to stop short of unusual misconduct. What advice would you give them? I don't know that I'm in the position to be providing advice for how to stop just shy of committing an unusual violation. Well, wouldn't you say that that is what your other three cases are about? That's willful. That's, I don't believe in the National Labor Relations Act and I'm not going to follow it. That seems a pretty clear case. Right. And I think that it is difficult. Regardless of what else they do. Sure. I think it is difficult to administer the test. But I think as Judge Garland, as you pointed out, that that's particularly in the province of the board to look at. I guess here, I'm going to answer Judge Ballard's question first. I guess what I would say first is to any employer, go to the table and bargain. I think that's pretty simple advice.  If that means you want to engage in hard bargaining, if that means that you want to bend beyond what your positions will permit, that's fine. But just do it in good faith. But to Judge Garland's point, no, I do think that it is difficult to administer the test. But the fact is, that's the test. Unbelievable provides the test. And it's been there since 1995. And it's not my understanding that they're actually challenging the test itself. Because it's not in their brief. So let's accept that the test is unusually aggravated misconduct. But that's particularly within the board's expertise to determine on the totality. Don't strip away like they do before this court. Where they go point by – well, first they say, we're not contesting the violations. And then they go through and they parse each individual violation and say, that's not bad faith. Then we did this. But that's not bad faith. And that's not what the board does. The board looked at the totality of the circumstances and said, you engaged in unusually aggravated misconduct. You didn't submit any proposals until eight sessions in after the mediator was called in. You walked out of four bargaining sessions. I think there's some dispute about that. But the record is pretty clear. There were four. They walked out on – let's see. They walked out on September 12th without explanation. They walked out on the one with the management official there, where you're right, which was on October 11th. They walked out on December 28th after five or six minutes. And then they walked out on January 8th after 15 minutes. So I guess there's some dispute as to whether it was a five-minute meeting or a three-minute meeting. Did it count? But there were four sessions that they walked out on. Unless there are any other questions, I don't have. Okay. Is there any time left? Thank you. And we would request, obviously, full enforcement of the decision and a denial of the remand. Yes, that was your position. Yeah. All right. You're over your time. As in the last case, I'll give you another minute. Okay. Thank you, Your Honor. With my brief remaining time, I'd like to just briefly address the reasons why this court should deny enforcement or alternatively remand the case to the board. The board's attorney herself admits that the standard has become difficult to manage because there is no clear understanding, as evidenced by the lack of explanation in the board's decision, for why they would depart from the standard set forth in Unbelievable, which is a high bar for extraordinary cases of unusually aggravated misconduct. In a case like this, where there is a reason to believe that there was at least legal precedent to back up the hard bargaining approaches, if you would want to call them that, taken by the hospital. For those reasons, the board has failed to uphold its administrative duty to explain its decision-making and explain any departures it makes from its precedent, rendering its decision in this case arbitrary and capricious. Counsel, just to remind you, you're suggesting a substantial departure from precedent. I don't get it, actually. They are attempting to remain faithful to Unbelievable, and they say that the record shows that the respondent deliberately acted to prevent any meaningful progress in bargaining. And that is in the nature of lawfulness. And so, yes, there is better evidence of lawfulness, different evidence of lawfulness, but the board found it here, that there was an intention by the employer, deliberately, to act in a way to prevent bargaining from going forward. They are perfectly consistent with what they said. There's nothing in the case law that says you have to have an employer who starts out by confessing, I hate the NLRA, I hate the NLRB, and I hate unions. And so, watch me, because everything I do now is going to be consistent with that. That's not the test. No, Your Honor, but the test is set forth by Unbelievable. I'm looking at the test, and I'm looking at the board's findings. Respondent deliberately acted to prevent any meaningful progress. It's egregious. The board's finding is it's egregious, and we attack that finding based on the fact it's not supported by the evidence in the record as a whole. And then we attack the application, given the difference of the cases, on the standard of arbitrary and capricious decision-making by the board. For those reasons, we believe the case should be denied enforcement or remanded. We'll take the matter under submission, and we'll take a break for the next case.
judges: Garland, Pillard, Edwards